# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MOLLY M. KILGORE,

                Petitioner,

    v.

DEBORAH PATRICK,

                Respondent.

_____/

CV F   07-00872 OWW DLB HC

FINDINGS AND RECOMMENDATION
REGARDING PETITION FOR WRIT OF
HABEAS CORPUS

[Doc. 1]

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) pursuant to a valid judgment of the Santa Clara County Superior Court, after being convicted of first degree murder, robbery, and conspiracy to commit robbery. Petitioner was sentenced to an indeterminate life sentence. (Exhibit A, Abstract of Judgment.)

In the instant petition, Petitioner does not challenge the validity of her underlying conviction; rather, Petitioner challenges a decision of the California Board of Prison Terms (now California Board of Parole Hearings) (hereinafter "BPH") finding her unsuitable for parole following a consideration hearing on October 22, 2003. Petitioner contends that the BPH's decision is not supported by "some evidence" in violation of her due process rights.

Petitioner sought habeas corpus relief in the Santa Clara County Superior Court, California Court of Appeal, and California Supreme Court. Although the Superior Court initially

1

granted relief, the Court of Appeal reversed such finding, and denying the petition for writ of

habeas corpus.  The California Supreme Court issued a summary denial.  (Exhibits D & E.)

STATEMENT OF FACTS[1]

In October 1978, [Petitioner] and her codefendant Martina Griffin went to a bar and met the victim, Byron O'Brien and had a drink with him.  After having a drink in the bar, O'Brien invited them to his house for a drink.  The three got into O'Brien's car, and he drove them to accomplice Ruby Johnson's house, where Griffin was staying, so she could get a coat.  When Griffin returned to car, she had a concealed knife that she then gave to [Petitioner] to conceal in her stocking.  Griffin then reentered the house, and returned to the car with codefendant Jack Scott who also got into the car.  After driving a short distance, Scott pulled out a gun and ordered O'Brien to pull over.  After O'Brien complied, everyone got out of the car, and [Petitioner] pulled out the knife.  After the victim handed his money over to the defendants, Scott fired one shot in the air and ordered everyone back into the car.  After the victim got back into the car, he was shot and killed.

[Petitioner] claimed that Scott was the one who actually shot and killed the victim.  However, as the victim was dying, he said one of the women shot him.  There was no evidence that Griffin, the only other woman at the scene, ever held the gun.  Moreover, [Petitioner] admitted to Johnson that she was holding the gun when it went off, and Griffin identified [Petitioner] as the shooter.  There is also evidence that [Petitioner] hit the victim over the head with a coke bottle.

[Petitioner] pleaded guilty to first degree murder, robbery and conspiracy to commit robbery.  She was sentenced to a term of 11 years to life, with the possibility of parole. [Petitioner's] minimum eligibility parole date was set at October 15, 1985.

(Exhibit D, Opinion, at 1-2.)

DISCUSSION

I.    Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries

v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th

Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,

521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its

---

[1]  The statement of facts is taken verbatim from the decision of the California Court of Appeal, Sixth Appellate District, which is substantiated by the probation officer's report.  (Exhibits C & D.)  Further elaboration of the facts will be discussed in the analysis where necessary.

provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

1  Court on a question of law or if the state court decides a case differently than [the] Court has on a

2  set of materially indistinguishable facts."  Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.

3  at 72.  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the

4  state court identifies the correct governing legal principle from [the] Court's decisions but

5  unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at

6  413.

7        "[A] federal court may not issue the writ simply because the court concludes in its

8  independent judgment that the relevant state court decision applied clearly established federal

9  law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

10  A federal habeas court making the "unreasonable application" inquiry should ask whether the

11  state court's application of clearly established federal law was "objectively unreasonable."  Id. at

12  409.

13        Petitioner has the burden of establishing that the decision of the state court is contrary to

14  or involved an unreasonable application of United States Supreme Court precedent.  Baylor v.

15  Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

16  states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

17  state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th

18  Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

19        AEDPA requires that we give considerable deference to state court decisions. The state

20  court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

21  interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), cert. denied,

22  537 U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

23        Because the California Supreme Court's opinion is summary in nature, however, this

24  Court "looks through" that decision and presumes it adopted the reasoning of the California

25  Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker,

26  501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas

27  review, "look through" presumption that higher court agrees with lower court's reasoning where

28  former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7

1   (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining

2   whether state court's rejection of petitioner's claims was contrary to or an unreasonable

3   application of federal law under § 2254(d)(1)).

4   II.      Review of Claims

5        A parole release determination is not subject to all of the due process protections of an

6   adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see

7   also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979)

8   (explaining that due process is flexible and calls for procedural protections that particular

9   situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution,

10  the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated,

11  even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of

12  Parole, 833 F.2d 1389, 1390 (9th Cir.1987).  At a state parole board proceeding, an inmate is

13  entitled to the following procedural protections: 1) the inmate must receive advance written

14  notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to

15  be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be

16  told why "he falls short of qualifying for parole." Id.

17       As to these procedural protections, as Respondent submits, Petitioner was provided all

18  that is required.  Petitioner was provided with advance notice of the hearing, an opportunity to

19  submit materials for the Board's consideration, an opportunity to be heard during the hearing,

20  representation by his attorney, and a written decision explaining the reasons that parole was

21  denied.

22       "In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation

23  of *good time* does not comport with 'the minimum requirements of procedural due process,'

24  unless the findings of the prison disciplinary board are supported by *some evidence* in the

25  record.'  472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)."

26  Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added).

27  Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held

28  that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a

5

1  prisoner of due process with respect to this interest if the board's decision is not supported by

2  'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole

3  board's suitability determination was supported by 'some evidence' in a habeas case, our analysis

4  is framed by the statutes and regulations governing parole suitability determinations in the

5  relevant state." Irons, 505 F.3d at 851.  Here, the Court must look to California law and review

6  the record.  In reviewing the record and determining whether the "some evidence" standard is

7  met, the Court need not examine the entire record, independently assess the credibility of

8  witnesses, or re-weigh the evidence.  Sass, 461 F.3d at 1128.

9       California law provides that after an inmate has served the minimum term of confinement

10 required by statute, the Board "shall set a release date unless it determines that the gravity of the

11 current convicted offense or offenses, or the timing and gravity of current or past convicted

12 offense or offenses, is such that consideration of the public safety requires a more lengthy period

13 of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel

14 the prisoner will pose an unreasonable risk of danger to society if released from prison," the

15 prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The

16 Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it

17 has set forth in the California Code of Regulations.

18      At Petitioner's parole hearing in 2003, the BPH denied parole based on the circumstances

19 of  Petitioner's commitment offense, Petitioner's institutional behavior including 38 serious

20 disciplinary charges and 126 counseling chronos, and the psychological report was not fully

21 supportive of release.  In addition, the BPH cited the District Attorney's opposition to parole.

22 (See Exhibit B, at 74-80.)

23      The first and primary factor the BPH relied on was the fact that the first degree murder

24 was carried out in a dispassionate and calculated manner.[2]  (Exhibit B, 74-75; Cal. Code Regs.

25

26      [2] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances
tending to demonstrate unsuitability for parole regarding the committed offense.  The factors to be considered
27 include:
      (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
28    (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style
murder.
      (C) The victim was abused, defiled or mutilated during or after the offense.

tit. 15, § 2402(c)(1)(B), (C).) .)  "Some evidence" supports the BPH's finding.  Under California law, the commitment offense and past convicted offenses alone provide a sufficient basis to deny parole.  In re Dannenberg, 34 Cal.4th at 1061, 1095 (2005); Cal. Penal Code § 3041(b).  In order to find that an offense was committed "in an especially heinous, atrocious or cruel manner" there must be some evidence that the "violence and viciousness of the inmate's crime" is greater than that which is "minimally necessary to convict [the defendant] of the offense for which he is confined.  (Cal. Code Regs. tit. 15, § 2402(c)(1); In re Dannenberg, 34 Cal.4th 1061, 1095 (2005).

In this instance, Petitioner and her codefendant set out to a bar to find someone to "turn a trick."  The two met Mr. O'Brien at the bar and believing that he was going to engage in sexual relations with Petitioner's codefendant, he left with both of them in his car.  It was later decided that they would instead rob the victim.  Codefendant, Jack Scott, joined the two and was armed with a gun.  Prior to the robbery, codefendant Griffin obtained a knife.  Petitioner does not dispute that the victim was not resisting their attempts to rob him of his money, and prior to the actual robbery she hit him over the head with a coke bottle for no apparent reason.  The victim was then ordered out of the car, and Petitioner claims that she fired the gun into the air and codefendant Scott fired the fatal shot at O'Brien.  As stated by the BPH, regardless of who actually fired the fatal shot, Petitioner nonetheless was a principal in the murder and robbery of O'Brien.  In addition, the motive for the crime was very trivial, as the victim was shot, after they obtained his money, which was under $100.  (Exhibit B, at 75.)  These factual circumstances support the BPH's finding that the commitment offense was carried out in a dispassionate manner, and was beyond what was minimally necessary to support a conviction for first degree murder.

The BPH further found that Petitioner continued to display negative institutional behavior upon her imprisonment by acquiring 38 rules violation reports.  (Exhibit B, at 75; Cal. Code

---

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

Cal.Code Regs. tit. 15, § 2402(c)(1)(A)-(E).

Regs. tit. 15, § 2402(c)(6).)  Although the last rules violation occurred approximately seven and a half years prior in 1996, such was not sufficient to overcome her terrible institutional behavior prior to that time.  In addition, over the course of her imprisonment, Petitioner acquired 126 counseling chronos, the last in March 2001. (Exhibit B, at 75.)  It was also noted that Petitioner previously suffered a prior robbery conviction causing injury when she was 16 years for which she received juvenile detention,[3] and failed to benefit from such punishment.  (Exhibit B, at 77; Cal. Code Regs. tit. 15, § 2402(b), (c)(2).)

Next, the BPH considered and found that the psychological report authored by Dr. Steven Walker, dated August 12, 2003, was not unequivocally supportive of Petitioner's release.  The BPH noted that Petitioner has as a low to moderately low risk of re-offending.  The BPH believed it "might be hedging it a little bit.  That might be - - It almost seems like he's not willing to state it's either low.  It's moderate.  It's high.  Instead he states it's low to moderately low.  Regardless, it doesn't totally support release."  (Exhibit B, at 76.; Cal. Code Regs. tit. 15, § 2402(b).)

Finally, the BPH considered the District Attorney's opposition to parole.  This was properly considered pursuant to California Penal Code section 3042(a) and (f)(3), and Cal. Code Regs. tit. 15, § 2402(b).

The BPH also considered the factors in support of a finding of suitability and commended Petitioner for staying disciplinary free, upgrading educationally and attempting to obtain her GED, laudatory letter for her work in GED studies, completion of upholstery, office services, and related technologies, participation in Long Termers Organization, WAC, NA, stress management and psychotherapy, positive work reports, solid parole plans, and marketable job skills. (Exhibit B, at 75-76; Cal. Code Regs. tit. 15, § 2402(d).)  However, on balance, the BPH found that these factors did not outweigh the finding of unsuitability.  The BPH found that Petitioner's gains were recent and further process was warranted in order to make the finding that she no longer posed a

---

[3] Respondent incorrectly states that Petitioner has suffered three prior robbery conviction, possibly because the BPH mistakenly stated that Petitioner was "convicted of a previous robbery three previous to the commitment offense when she was just 16." (Exhibit B, at 77.) Upon review of the record, it is clear that Petitioner suffered only one prior robbery conviction, and the BPH meant to state that she suffered such conviction three years prior to the commitment offense.

1  danger to public safety.  (Exhibit B, at 78.)  The BPH recommended to Petitioner that he "remain

2  disciplinary-free, that you continue to upgrade educationally, and that you participate in self-help

3  as it becomes available to you."  (Exhibit B, at 77.)

4       Petitioner argues that the BPH continues to deny parole based on the circumstances of the

5  commitment offense giving rise to a due process violation.[4]  However, as previously stated, the

6  BPH relied not only on the circumstances of the commitment offense, but also on Petitioner's

7  institutional behavior and unequivocal psychological report.

8       The BPH's findings are supported by "some evidence" and it cannot be said that the state

9  court's resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved

10  an unreasonable application of, clearly established Federal law, as determined by the Supreme

11  Court of the United States" or "resulted in a decision that was based on an unreasonable

12  determination of the facts in light of the evidence before the state court."

13                              RECOMMENDATION

14       Based on the foregoing, it is HEREBY RECOMMENDED that:

15       1.      The instant petition for writ of habeas corpus be DENIED; and

16       2.      The Clerk of Court be directed to enter judgment in favor of Respondent.

17       This Findings and Recommendation is submitted to the assigned United States District

18  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

19  the Local Rules of Practice for the United States District Court, Eastern District of California.

20  Within thirty (30) days after being served with a copy, any party may file written objections with

21  the court and serve a copy on all parties.  Such a document should be captioned "Objections to

22  Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served

23  and filed within ten (10) court days (plus three days if served by mail) after service of the

24  _____

25  [4] In Biggs v. Terhune, where the Ninth Circuit stated that "continued reliance in the future on an
unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the

26  rehabilitative goals espoused by the prison system and could result in a due process violation."  334 F.3d 910, 916-
917 (9th Cir. 2003); see also Sass v. California Board of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006) (the

27  Ninth Circuit held that it was not a per se due process violation if the Board determines parole suitability based
solely on the unchanging factors of the commitment offense and prior offenses; Irons v. Carey, 505 F.3d 846 (9th Cir.

28  2007)(the Ninth Circuit again upheld the denial of parole based on the prisoner's commitment offense and prior
criminal history, but acknowledged the continuing validity of the holding in Biggs, and finding that relief for Irons
was foreclosed by Sass.)

1    objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

2    636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time

3    may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th

4    Cir. 1991).

5         IT IS SO ORDERED.

6    **Dated:    August 11, 2008**              **/s/ Dennis L. Beck**
                                            UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28